In re Robert Z. GERGELY, Debtor.

Jordan Alexander LEE–BENNER, a minor, By and Through his guardian ad litem, Karen MILLS, Appellant,

v.

Robert Z. GERGELY, Appellee.

BAP No. CC–94–1111–VJO.
Bankruptcy No. LA 92–49989–AA.
Adv. No. 93–01432–AA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 19, 1994.

Opinion June 12, 1995.

Amended Opinion Aug. 31, 1995.

Bridget Baynes, Santa Ana Heights, CA, Richard D. Brady, Costa Mesa, CA, for Appellant.

Gary A. Starre, Los Angeles, CA, for Appellee.

Before VOLINN, JONES and OLLASON, Bankruptcy Judges.

## AMENDED OPINION

VOLINN, Bankruptcy Judge:

After the opinion was filed, appellant filed a motion for rehearing. The panel has reviewed and considered all of the additional pleadings from both the appellant and appellee. Taking note of these arguments we file this amended opinion in which we have made certain minor changes or deletions and discuss, in Part IV below, the primary contention of appellant relating to amendment of the original complaint. Consequently, we withdraw the opinion filed on June 12, 1995, and file in its stead this amended opinion.

### I. *Background*

On May 23, 1982, the mother of Jordan Alexander Lee–Benner, Ms. Karen Mills, consulted with Dr. Robert Z. Gergely concerning the treatment and care he would provide during pregnancy and delivery of her child. Since Jordan was born on November 1, 1982, the professional consultation and care occurred between May 23 and that date. During pregnancy Dr. Gergely performed an amniocentesis. Jordan at birth was blind in one eye. Ms. Mills contended that the blindness was caused by misdirection of the amniocentesis needle which had pierced Jordan's eye.

By statute (Cal.Fam.App. § 29, cited below) she had six years from birth to bring an action for malpractice on behalf of the child. On October 28, 1988, she filed a complaint entitled "Complaint for Damages for Personal Injury (Medical Negligence)." The complaint in its description of Dr. Gergely's conduct spoke specifically in terms of negligence. In paragraph 9 of the complaint, the plaintiff stated that Dr. Gergely et al., "so negligently examined, diagnosed, treated and cared for the plaintiff, JORDAN ALEXANDER LEE–BENNER, causing Plaintiff to suffer permanent injuries...." The same paragraph stated that Dr. Gergely "failed to exercise that degree of skill, care and/or treatment common to medical providers treating patients in a like or similar circumstance, including, but not limited to, performing an unnecessary amniocentesis without proper informed consent...."

Paragraph 10 alleged the injuries arose "[a]s a direct and proximate result of the negligence of said defendants...."

Paragraph 7 of the complaint stated that:

Defendants, and each of them, were the agents, servants, employees, co-conspirators, joint venturers and/or partners ... acting within the course, scope, purpose and authority of said agency and employment, conspiracy or relationship; that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and/or hiring of, and/or ratified the actions of each and every defendant....

This paragraph, while using the word "co-conspirators," alleges no factual context for the use of the word as it might relate to any factor affecting the relationship of Dr. Gergely to the mother or to the child. In sum, in

characterizing Dr. Gergely's conduct, the complaint speaks only to negligence.

The proceedings initiated by the complaint led to a trial and ultimately a tentative decision by the state court judge on November 1, 1989 (Jordan's seventh birthday). This decision on page two concluded that "Each of plaintiff's theories of recovery (lack of informed consent and negligence) are viable." On December 11, 1989, a judgment was entered accordingly against Dr. Gergely in the sum of $708,202.00, plus interest at 10%. There is no language in the tentative decision or the judgment which states expressly or by inference that Dr. Gergely's wrongful action or inaction was intentional.

It turned out that Dr. Gergely's insurance company was insolvent. Ultimately, on October 19, 1992, nearly ten years after Jordan was born, the debtor filed his bankruptcy, listing plaintiff as an unsecured creditor. On January 25, 1993, Jordan (through his mother, as Guardian ad litem) filed a "Complaint to Determine Dischargeability and to Object to the Discharge of the Debtor" (11 U.S.C. §§ 523 and 727).[1]

The dischargeability allegations of the complaint refer to 11 U.S.C. § 523(a)(2)(A) for fraud;[2] § 523(a)(4) for breach of fiduciary duty;[3] and § 523(a)(6) for willful and malicious injury.[4]

These allegations relating to intentional wrongs, stated for the first time some ten years after the critical event, bring us to the threshold issue, which is application of the statute of limitations. As noted, by statute California allows actions for personal injury to a fetus before or during birth to be brought no later than six years after the date of birth, in this case, November 1, 1988. The statute states in pertinent part:

> A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interest in the event of its subsequent birth; but any action by or on behalf of a minor for personal injuries sustained prior to or in the course of its birth must be brought within six years from the date of birth of the minor....

Cal.Fam.App. § 29 (West 1994) (formerly Cal.Civ.Proc.Code § 29, repealed 1994).[5]

The original complaint, filed near the limit of this period, made no reference to an intentional tort nor to wanton or malicious conduct. Ultimately the state court judgment was entered, as indicated, on December 11, 1989. The state court judge found and concluded in his tentative decision that "Each of plaintiff's theories of recovery (lack of informed consent and negligence) are viable."

 It is clear that on the basis of the state court tentative decision and judgment, pursuant to the complaint, that the debt would have been dischargeable as matters stood on the date the judgment was entered in 1989 and on the date bankruptcy was filed.

1. Appellant's § 727 claims opposing debtor's discharge were dismissed with leave to amend. After amendment and subsequent trial, these claims were overruled by the court, and the decision is presently on appeal before the BAP as BAP No. CC–94–2459.

2. "[That Dr. Gergely] intentionally and improperly misinformed Plaintiff's mother (hereinafter "Ms. Mills") as to the need for, and the risks associated with, the amniocentesis. This intentional action by Defendant resulted in the performing of the amniocentesis during which Plaintiff was severely injured. Had Defendant properly informed Ms. Mills of the need for, and the risks associated with, the amniocentesis, Ms. Mills would not have had the procedure performed, and Plaintiff would not have been severely injured."

*Complaint* at ¶ 3.

3. "[That the fraud was] perpetrated by Defendant while acting in a fiduciary capacity as a medical doctor."
*Complaint* at ¶ 13.

4. "[That] Defendant has willfully and maliciously injured Plaintiff in that Defendant intentionally made certain commissions and omissions which injured Plaintiff without just cause or excuse, including, without limitation, the above alleged false representations, the above alleged actual fraud, and the above alleged acts constituting recklessness, gross error and wanton disregard for the safety of Plaintiff and Ms. Mills."
*Complaint* at ¶ 15.

5. Cal.C.C.P. § 338 provides a three year statute of limitations for fraud (or the date of its discovery); Cal.C.C.P. § 340 places a one year statute of limitations on actions for intentional torts such as assault, battery and injury resulting from a wrongful act or neglect.

Taken by itself, the judgment does not provide a basis for collateral estoppel in that the claim and the court's ruling are not directed to any provision in § 523 relating to nondischargeability. Nor is *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), applicable here. *Brown* ruled that the doctrine of *res judicata* did not apply to the facts in that case, holding that where a creditor sued on certain causes of action (contract and fraud) which went to judgment only in the issue of contract, the separate cause of action for fraud could be pursued in a bankruptcy court discharge proceeding.[6]

## II. *The Trial Court's Ruling*

The bankruptcy judge, facing the statute of limitations issue, ruled that a dischargeability action against a debtor on a § 523 claim, where the statute had run on the intentional cause prior to bankruptcy, is subject to dismissal because it is based on an unenforceable claim.

The court started its analysis with language from *Penn. Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990), which in a discussion of the definition of a claim states, "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation...." The court reasoned that in order to find a debt nondischargeable, there must first be a claim. A claim, as defined in 11 U.S.C. § 101(5) is a right to payment, which, as defined above by the Supreme Court, is "an enforceable obligation." The bankruptcy judge in his tentative oral ruling stated:

Okay. I'm going to give you my tentative. I've given this considerable amount of thought, so here's my reasoning.

My first premise will be that in order— My first premise is that in order to find that the debt under 52—for the moment deal with 523(A)—is that in order for there to be a "debt" that can be held nondischargeable, that there must be an enforceable obligation. And I get that primarily from the discussion in the Supreme Court case of Pennsylvania *Department of Public Welfare v. Davenport,* which specifically says—this is at [495 U.S. 552] 110 Supreme Court 2126 [109 L.Ed.2d 588], actually [495 U.S. at 559, 110 S.Ct. at] page 2131, quote—and they're discussing the meaning of claim and, of course, the obverse side of claim is debt—"The plain meaning of a "right to payment" is nothing more nor less than an enforceable obligation."

Taking that as the premise then, I find that the only cause of action here that was enforceable when the bankruptcy was filed was the judgment predicated upon the lack of informed consent and/or negligence.

I further find that the statute of limitations ran pre-petition on fraud as well as any battery cause of action under state law, which would be the only two causes of action that could result in a nondischargeable judgment.

I would further find that plaintiff has no standing to assert fraud while acting in a fiduciary capacity—that's the (a)(4) cause of action—because, first of all, there is no fraud against the plaintiff here and being there's no fiduciary duty to the plaintiff here.

In addition, I would find that the plaintiff has no standing to assert fraud in the 523(a)(2)(A) against the plaintiff. Also, I note there's no allegation that any money, property, or services were obtained by fraud here.

There are no facts alleged which would show willful and malicious injury via the debtor to plaintiff here. So I believe the plaintiff has no cause of action for fraud or battery outside bankruptcy, and I would further find, I believe, it would be inequitable to "revive" [sic] that cause of action inside bankruptcy; for example, one of the

**6.** In *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court overruled *In re Daley,* 776 F.2d 834 (9th Cir. 1985) and *In re Houtman,* 568 F.2d 651 (9th Cir.1978) insofar as they held that the doctrine of collateral estoppel did not apply to dischargeability proceedings. Doctrines of repose, such as collateral estoppel and the statute of limitations, are applicable in bankruptcy court. *See, e.g., In re Berr,* 172 B.R. 299 (9th Cir. BAP 1994) (court applied doctrine of collateral estoppel in dischargeability proceeding). A creditor's opportunities to litigate dischargeability issues are not without some limit.

points made in the *Kelly* case. [*In re Kelly,* 140 B.R. 291 (Bankr.N.D.Okla. 1992) ]. If the plaintiff had filed a proof of claim based on fraud or, for that matter, battery here, they clearly would be disallowed against the estate.

Moreover, to allow revival of the fraud cause of action would certainly have a chilling effect on the debtor's filing bankruptcy in the first instance, and I believe would subvert his right to a "fresh start." I.e., a debtor would be chilled from filing bankruptcy knowing that a risk would be made—that the debtor would run the risk of being not under action that could not be enforced under state law that would essentially be enforced through the bankruptcy.

*Transcript of Proceedings* at 3:17 et seq.

### III. *Authority Dealing With Statute of Limitations*

■ Two major areas involving viability of debts or claims in bankruptcy relate to treatment of creditor's claim and dischargeability proceedings. As to claims, § 502(b)(1) provides that:

[T]he court, after notice and a hearing ... shall allow such claim in such amount except to the extent that—*(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law* for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1) (emphasis added).

As indicated in the *Pennsylvania Dept. of Public Welfare* case, the Supreme Court in dealing with a restitution claim held that its viability was dependent on its enforceability. As to whether the concept of enforceability, or lack thereof, includes the statute of limitations, one treatise states that if:

applicable law, including state law, would afford the debtor a defense to a claim of a creditor, in whole or in part, absent bankruptcy, such defense is available to the trustee in objecting to the claim to the end that it would be disallowed and disentitled, therefore, to share in a distribution of the debtor's assets. Thus, if a claim would be unenforceable against the debtor or against property of the debtor because,

under applicable law, the debtor could raise the defense of usury, fraud, lack of consideration, or unconscionability, *or the expiration of a statute of limitations,* such defense affords the trustee a basis for the disallowance of the claim on the ground that it would be unenforceable under applicable law.

Lawrence King, 3 *Collier on Bankruptcy* ¶ 502.02 (502–24–25) (15th ed.) (emphasis supplied).

■ It would follow from the foregoing that if the creditor does not have an enforceable claim, a suit with respect to the dischargeability thereof would be a useless exercise. The issue is more complex, where as here, litigation relating to the claim was brought timely but judgment was entered on grounds unrelated to and insufficient for supporting a claim under § 523, then after time has run, independent grounds related to the original incident are pleaded. Authority in this area is sparse and contradictory. The debtor has cited various cases, particularly *In re Kelly,* 140 B.R. 291 (Bankr.N.D.Okla. 1992), which held that a negligence judgment could not be a basis for pursuing a nondischargeable assault claim in bankruptcy which was time barred prior to bankruptcy. The reasoning of *In re Ovetsky,* 100 B.R. 115 (Bankr.N.D.Ga.1989), also supports applicability of state statutes of limitations. There the court held that the claim could have been outlawed in a dischargeability action had the statute run; but because two statutes of limitations from different states were involved, the court could examine the equities of the case and determine which statute should apply and it applied the longer statute. There is also *In re Taylor,* 137 B.R. 925 (Bankr.S.D.Ind.1991), which held that a creditor who obtained a state court judgment on a breach of contract claim after the limitations period for a fraud claim had run was precluded from asserting the debtor's fraud as a basis for nondischargeability of the judgment. The creditor (United States Internal Revenue Service) had brought its original suit in 1983 in the Southern District of Indiana and, in that case, which was a straight tax claim and did not involve a claim for fraud or conversion, the debtor defaulted.

The following statement from *Taylor* is relevant:

> Both the Debtor and the United States agree that no tort claim was asserted. The Debtor had no reason to defend, on the basis of the statute of limitations, a tort claim that was not advanced. Like creditors, debtors should not be required "to engage in hypothetical litigation in an inappropriate forum" to protect rights that will become an issue only in the event of a later bankruptcy. *See Brown v. Felsen,* 442 U.S. at 137, 99 S.Ct. at 2212.
>
> The United States cannot now, nearly 16 years after the tort claim arose and nearly 10 years after the limitations period for the tort claim expired, raise the neglected tort issues as a basis for nondischargeability and contend that the Debtor's invocation of the statute of limitations is untimely. Such a result would be consistent with neither the purpose of statutes of repose nor with the underlying rationale of *Brown v. Felsen.* The Court concludes that the United States' tort claim against the Debtor is time-barred, and thus, its claim of nondischargeability is moot. The Debtor's Motion to Dismiss will therefore be granted.

*In re Taylor,* 137 B.R. at 929.

Appellant distinguishes *Kelly* and *Taylor* by pointing out that in both cases the statute of limitations had run on the tort actions prior to the contract action having been instituted, whereas in the instant case the state court action for an intentional tort had not run when the negligence action had been instituted because the six year extension of Cal.Fam.App. § 29 includes intentional torts. The facts in both cases are as indicated but in neither case is the distinction critical. Both cases, particularly *Kelly,* point out that by the date of bankruptcy, the statute had run on the tort claim. This is the case here.

A case in the Ninth Circuit somewhat in support of the relevance of the statute of limitations is *In re Pascucci,* 90 B.R. 438 (Bankr.C.D.Cal.1988). Here, the bankruptcy judge was considering a fraud claim brought by the debtor's insurer. He pointed out that the California statute of limitations for fraud was three years from the time the fraud is discovered or should be discovered. He stated, "The statute of limitations was tolled by the filing of the bankruptcy case on November 8, 1985 and has not begun to run again." But he indicated that had the statute run prior to bankruptcy, there could be no dischargeability action: "Because MGC claims that its debt is nondischargeable under § 523(a)(2), the statute of limitations has not run unless it ran before this bankruptcy was filed." 90 B.R. at 443.

There are cases on the other side, favoring the creditor. One of them is a Ninth Circuit case, *In re Gross,* 654 F.2d 602 (1981), where the debtor raised two defenses to a § 523(a)(2) fraud action. The court was dealing with a pre-Code case and spent most of its time discussing the debtor's attempt to "obfuscate the difference between 'provable' and 'allowable'." *Id.* at 604. It also dealt with the *Brown v. Felsen* argument in refuting appellant's contention of *res judicata* because fraud was not mentioned in the prior action. In a short final paragraph, the court summarily stated that appellant's contention that the creditor was barred by California's three year statute of limitations would not work since the debtor was not seeking a new money judgment based on fraud, but rather was litigating the dischargeability issue under § 17(a)(2) of the former Bankruptcy Act. There was no discussion or reasoning in the case as to the basis of its ruling on this issue and it is unclear as to whether or not there was a factual situation comparable to the one before us.

The major case favoring appellant is fairly recent: *In re McKendry,* 40 F.3d 331, *rehearing denied,* (10th Cir.1994). In this case, the debt originated in a loan made in 1980 by American Federal Savings & Loan (American) to a limited partnership in which the debtor was a general partner. As happened frequently in the last decade, American foundered and was ultimately taken over by the RTC. The collateral for the loan, a strip mall, was sold and a deficiency judgment taken against the debtor in the sum of $782,000 on October 3, 1990. He filed a Chapter 7 bankruptcy on October 10, 1990. Thereafter, American filed a § 523(a)(2) dischargeability complaint against him. The

debtor argued that the statute of limitations for fraud had long since run. RTC contended that the only time limit was Bankruptcy Rule 4007(c), that is, within sixty days after the § 341 meeting, and that this time requirement had been met. As to what happened in the litigation prior to the appeal to the Circuit, a summary in the Circuit opinion states:

> The bankruptcy court held that the applicable statute of limitations was the Colorado provision limiting causes of action for fraud to claims brought within three years after accrual thereof. The bankruptcy court further held that Old American Federal, and therefore the RTC, should have been aware of the alleged fraud at one of the following times: when it purchased the loan in 1980; when it approved the sale of the two-thirds interest to Ms. Leigh in 1982 and 1983; when it reviewed the file in 1986 as a result of the delinquencies; in July 1987 when it sought relief from stay in Ms. Leigh's bankruptcy case; or in October 1987 when it signed a proposed stipulation releasing McKendry and Cunningham from any claim of delinquency on the loan, although that stipulation was never signed by McKendry or Cunningham or approved by the court. Accordingly, the bankruptcy court held that the RTC's complaint for a determination of nondischargeability pursuant to § 523(c) was time-barred. The RTC appealed to the district court, which made oral findings of fact and conclusions of law and affirmed.

40 F.3d at 333–34.

The Circuit Court then stated the issue as follows:

> The question in this case is, where a debt has been reduced to judgment in state court, can the bankruptcy court be barred by a state statute of limitations from considering the underlying nature of the debt in determining whether that debt is dischargeable.

*Id.*

■ Thus, the court broadly framed the issue on the basis of a debt that has been reduced to judgment, but contained in its statement of the issue an assumption that "the underlying nature of the debt" is some-

thing other than the basis for the original judgment. With all due respect, this characterization is an over-simplification. A lawsuit can contain alternative or various counts, each of a different nature. They are independent, and it is a mischaracterization to contend that any particular one of them characterizes an underlying or singular nature of the claim. The court refers to *Brown v. Felsen*, but as indicated, that case did not deal with the statute of limitations. At another point, after having alluded to dischargeability proceedings for certain types of debts (§ 523(a)(2), (3), (4), (5), and (6)) as being exclusively within the jurisdiction of bankruptcy courts, the *McKendry* court stated that it would be inconsistent to permit a state statute of limitations to divest the bankruptcy court of such jurisdiction. The court concluded that this language is supported by the language and structure of Bankruptcy Rule 4007. Rule 4007(b) provides that complaints for dischargeability other than those filed under § 523(c), as indicated above, may be filed at any time, but by contrast with the above sections, there is a sixty day deadline under Rule 4007(c). The court then stated:

> It would make little sense to impose a sixty day filing period for claims of nondischargeability under Rule 4007(c) only to have the question of the timeliness of the claim determined by a state statute of limitations. We do not believe such was the intent of Congress.

*McKendry*, 40 F.3d at 336.

Again, this language is overly broad. It suggests that the short period for bringing a dischargeability suit under § 523, approximately two or three months, was intended by Congress to displace state statutes of limitation. It would seem to encompass even time-barred tort claims which had not been litigated, since the analysis of Rule 4007 is directed to nondischargeability claims generally and not only to claims which have been reduced to judgment.

It would be an anomalous result to allow a creditor like the one in *Kelly*, who can reduce his claim to judgment only on a theory of negligence because he has been time-barred from raising an assault claim, to be able to

raise the assault in subsequent bankruptcy proceedings to bar discharge of his judgment debt. The analysis of the *McKendry* court would countenance such a result.

The court briefly discussed cases with which it disagreed, citing the *Pascucci* case, and concluding that Judge Bufford's conclusion was done "without any substantial analysis." The court also criticized the *Taylor* case. It relied heavily on *In re Moran,* 152 B.R. 493 (Bankr.S.D.Ohio 1993). In *Moran,* the original state court complaint, which had been timely brought, contained language relative to wrongdoing by the defendant (an ultimate debtor in bankruptcy) and was subject to amendment. The case did not go to judgment and an application for amendment was pending in the state court at the time of bankruptcy. Nevertheless, during the course of bankruptcy the debtor contended that the statute of limitations had run prior to bankruptcy. Thus the complaint was clearly amendable to include specific allegations of fraud which would relate back making the action timely. The case is therefore distinguishable and does not provide support for Moran's conclusion that:

> There is a fundamental flaw in the debtor's position in that it fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability under § 523 of the Bankruptcy Code. In bankruptcy court there are two separate and distinct causes of action: (One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions.)

*In re Moran,* 152 B.R. at 495, quoting *In re Taylor,* 54 B.R. 515, 517–18 (Bankr.E.D.Va. 1985).

■ Aside from being *dicta,* this is a questionable analysis. Section 523 does not deal with disembodied debts which have no relationship to the debtor's pre-bankruptcy past. No creditor can bring a dischargeability proceeding unless it is brought on a claim. The claim must be of such a nature as to fit within the nondischargeability provisions of

§ 523. There is no separation between a cause of action on a debt and a dischargeability proceeding. The dischargeability proceeding vests in the bankruptcy court the power to except discharge of particular kinds of debts. The definition of those debts and their nature are essentially matters of non-bankruptcy and predominantly state law. If the debt is unenforceable under state law, then the creditor, as discussed above, does not have a claim to pursue. In the light of the foregoing it is difficult to understand *Moran's* further statement that:

> When a creditor is attempting to obtain a judgment in state court it may be assumed that it is the success of the litigation and the amount of recovery that are significant to the creditor and not the particular theory of recovery.

*Moran,* 152 B.R. at 496.

This statement is too general. Plaintiffs when they sue do have a factual basis to do so and state it in the form of a claim. They are required to do so. Litigation not infrequently involves disputed issues concerning the nature of the claim or claims, and courts in rendering judgment make findings as to fact and come to conclusions based on validity of the claims. Even the prove-up attendant to default judgments generally requires proof as to the nature and extent of the claim, not simply how much. The success of the litigation is dependent on the facts which flesh out the "theory of recovery" alluded to above.

### IV. *Additional Legal Authority*

Appellant cites California authority which he believes allows him to prosecute a cause of action for intentional tort in this case. The cases cited and discussed in appellant's supplemental memorandum and motion papers all concern amendment of on-going litigation. By urging the panel to consider state court cases, the appellant implicitly recognizes that the vehicle for pursuing his claim is the original lawsuit which is governed by the state statute of limitations.

■ Amendment is liberally allowed in California and under the federal civil rules. Fed.R.Civ.P. 15(c); *Grudt v. Los Angeles,* 2 Cal.3d 575, 86 Cal.Rptr. 465, 468 P.2d 825

(1970); *Weinstock v. Eissler,* 224 Cal.App.2d 212, 36 Cal.Rptr. 537 (1964). The California cases on this issue generally hold that where an amendment raises a new cause of action based on facts previously alleged, the amendment relates back to the date on which the original complaint was filed. Under this analysis, an action that would be time barred at the point of amendment may still be viable if it meets this criteria because it relates back to the original filing date. *See, e.g., Weinstock v. Eissler, supra.*

None of the California cases cited by appellant concerns amendment after a judgment has been entered. Even if they did, the cases would not be dispositive because the appellant has not sought leave to amend the state court pleadings here or in state court.

■■■■ Essentially, appellant argues that because he can amend his complaint under California law, the statute of limitations does not bar his pending dischargeability action. As explained above, a creditor has no greater rights in bankruptcy than it does prior to the petition being filed. When this bankruptcy was filed, appellant did not have a claim for intentional tort against the debtor. In order to prevail in the nondischargeability proceeding, therefore, the appellant must possess an enforceable claim against the debtor for an intentional tort. At most, the California cases cited by appellant suggest the possibility of amendment of the concluded state court litigation.

■■■ If the appellant wishes to follow this course, however, he must follow the applicable rules of procedure. To proceed in state court, he should have moved for relief from stay for this purpose. Then he could have moved to amend his complaint in state court, a motion which might or might not have been granted. Alternatively, the appellant could have attempted to remove the state court litigation to bankruptcy court and sought amendment there. The appellant did not pursue either course.

■■■ Even if appellant had proceeded as described above, the motion to amend, whether brought in state or bankruptcy court, would be subject to the court's discre-

tion. Obtaining amendment of the state court litigation at this late stage is questionable at best. *See Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir.1983) ("As the length of the delay in making the motion to amend increases, the threshold for demonstrating undue prejudice to the opposing party is correspondingly diminished.").

The record shows that the bankruptcy court reviewed the appellant's claim of nondischargeability and dismissed it. The court discussed the length of time that had passed since the incident. The appellant never sought removal of the state court action, nor did he indicate to the bankruptcy court that he sought amendment there. Assuming, *arguendo,* that the issue was inferentially before the bankruptcy court at the hearing on, its ruling could be construed to have denied the application because of the passage of time because the court state, "I think this is too late. No good cause shown why this could not have been brought much before now."

There is also a problem with the timeliness of such an application under the rules of civil procedure. Both the California and federal rules allow modification of a judgment if a request to do so is filed within ten days after the judgment is entered. Fed.R.Civ.P. 59(b) and (e); Cal.Civ.Proc.Code sec. 1008(a) (West). This is obviously not applicable here. The rules also allow for a longer time for modification. A litigant has one year under Fed.R.Civ.P. 60(b), or 180 days under Cal.Civ.Proc.Code sec. 659 (West), to seek relief from a judgment on the basis of fraud. There is also a "reasonable" provision under the federal rule as to matters other than those restricted by the one-year limitation. *See* Fed.R.Civ.P. 60(b)(6). Assuming that this point could be reached, appellant would be faced with the reasonable time limitation in which event we arrive again at the point of the court's discretionary ruling discussed above.

Appellant argues that the bankruptcy court has exclusive jurisdiction over the dischargeability issue; and that under *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the court can look to the extrinsic facts surrounding a state-court

judgment to determine if it is dischargeable in bankruptcy.

However, *Brown v. Felsen* did not involve the key issue which faces us here, that of the statute of limitations. *Brown* addressed the issue of res judicata in the context of nondischargeability proceedings. Unlike appellant, the creditor in *Brown* had alleged fraud in the state court litigation. The parties never litigated the issue, however, because they settled prior to trial. The corresponding stipulation and judgment did not reference the nature of the claim. Consequently, the Supreme Court held that collateral estoppel and res judicata did not apply in a subsequent nondischargeability proceeding. Although not discussed, presumably the creditor could have obtained an enforceable claim based on fraud in state court because such an action was not time-barred.

Here, the appellant's case was prosecuted to judgment on the issue of negligence. On the record before us, the appellant is barred under the applicable law from pursuing an intentional tort claim at this late date in state court. Under these facts, *Brown* does not countenance the reopening of this case.

## CONCLUSION

While this case on its facts presents strongly opposing equities, the debtor seeks surcease from the economic hardship of long outstanding litigation of a claim which arose in 1982 resulting in a considerable judgment based on negligence. On the other hand, the issue before us, as appellant puts it, is:

> Whether a judgment creditor who was blinded *in utero* because of a fraudulently induced unnecessary amniocentesis has a "claim" against Defendant which can be determined to be nondischargeable under 11 U.S.C. § 523(a)(2), (4), and (6).

However, this case fundamentally turns on an issue of law, the applicability of the statute of limitations to plaintiff's claim.

■ As discussed above, while *Brown v. Felsen* and its progeny have established that *res judicata* will not preclude a creditor from pursuing in bankruptcy an alternative claim when it was not pleaded in a prior action resulting in a judgment, these cases do not encompass application of the statute of limitations to the alternative claim. There is little question that state statutes of limitation have relevance in bankruptcy. In terms of policy, there is no clear reason why a creditor should be able to pursue an action under 11 U.S.C. § 523 based on a claim which *per se* would be unenforceable in state court. It is improbable that Congress, without explicitly providing therefor, would vitiate state statutes of limitation and permit dischargeability litigation on the type of intentional torts or wrongs designated in § 523 which are pleaded for the first time in bankruptcy after a state statute of limitations applicable to the claim has expired.

■ Here the time had long since run on instituting or pleading that separate cause of action. The intentional wrongs now pleaded by appellant had never manifested such a different character prior to bankruptcy. This new initiative formulated to re-litigate liability under § 523 should be treated independently and be subject to any permissible defense including the statute of limitations.

■ The trial court weighed the relative prejudice to each party that would accrue if it allowed the state claim to be reopened in the bankruptcy forum for litigation of an additional, and nondischargeable, claim. It determined that the inordinate length of time preceding presentation of the intentional claim and the inadequacy of the cause of action as alleged in the pleading warranted dismissal of the adversary proceeding. On the record before us, we are constrained to hold that the trial court's conclusion was proper. We therefore AFFIRM.