40 F.3d 331
 63 USLW 2313, 32 Collier Bankr.Cas.2d 550,
Bankr. L. Rep. P 76,184
 In re Donald H. McKENDRY, individually and as officer,
director and shareholder of McKendry Enterprises,
Inc., and as general partner in Sixth
Avenue Place Partnership and
Creekside I Ltd., Debtor.
RESOLUTION TRUST CORPORATION, as receiver for American
Federal Savings Association of Iowa, Appellant,
v.
Donald H. McKENDRY, Appellee.
 No. 93-1241.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 9, 1994.
Rehearing Denied Dec. 20, 1994.
 
 Karen J. Mathis of The Mathis Law Firm, P.C. (John F. Reha of The Mathis Law Firm, P.C., and Richard A. Marsh of Massey, Showalter & Marsh, P.C., Denver, CO, on the briefs), for appellant.
 Kimber Z. Smith of Sonheim, Helm & Less, Arvada, CO, for appellee.
 Before KELLY and McKAY, Circuit Judges, and ROSZKOWSKI,* District Judge.
 McKAY, Circuit Judge.
 
 
 1
 Appellant Resolution Trust Corporation (RTC) appeals from the district court's affirmance of the bankruptcy court's determination that the RTC's request for a determination of nondischargeability of a debt was barred by the state statute of limitations applicable to fraud actions.
 
 
 2
 The pertinent facts of this case as found by the bankruptcy court are as follows. On January 23, 1979, Donald McKendry and Carl Cunningham entered into a partnership ("the Partnership") whose primary purpose was to purchase certain real property and construct and operate a retail and office strip mall thereon. Also on that date, the Partnership entered into a real estate contract with Peek and McKendry Enterprises, Inc., a company controlled by McKendry and his wife, to purchase the land. That land was purchased in June 1976, at a cost of $3,096,053.
 
 
 3
 On February 7, 1979, the Partnership applied for a mortgage in the amount of $2,070,000 with Megapolitan Mortgage Company of Lakewood ("Megapolitan"). In the course of applying for the mortgage, McKendry prepared financial statements for himself, for Peek & McKendry Enterprises, and for Lu Mak Homes, Inc., another company controlled by McKendry. Megapolitan prepared a financial statement for the Partnership based on the information supplied in the financial statements. Megapolitan then packaged and submitted a loan analysis to American Federal Savings and Loan Association of Iowa ("Old American Federal"), offering Old American Federal the opportunity to purchase the proposed mortgage. On March 23, 1979, Old American Federal issued its commitment to purchase the loan. On February 28, 1980, Megapolitan closed its loan with the Partnership and sold and assigned the loan to Old American Federal.
 
 
 4
 In two transactions in July 1982 and March 1983, the Partnership sold a two-thirds interest in the strip mall to Susan Leigh. As part of the sale, Old American Federal approved the sale and assumption by Ms. Leigh of two-thirds of the obligation owed to it. Some time later, Ms. Leigh removed Mr. McKendry and Mr. Cunningham from the active management of the strip mall. During this time period, there were apparently no defaults on the loan payments. However, in February 1987, the loan went into default and on June 24, 1987, Ms. Leigh, doing business as Cedar Park Plaza Shopping Center, the mall at the center of this case, filed for reorganization under Chapter 11 of the Bankruptcy Code. After some procedural maneuvering not relevant here, Old American Federal foreclosed on the property. In 1989, Old American Federal initiated a lawsuit against McKendry and Cunningham for the deficiency. Old American Federal was placed in receivership during February 1990. On October 3, 1990, American Federal Savings Association of Iowa ("New American Federal"), the successor to Old American Federal, obtained a deficiency judgment against McKendry and Cunningham in the amount of $782,338.83, which amount included accrued interest. On October 10, 1990, McKendry filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. New American Federal filed a request pursuant to 11 U.S.C. Sec. 523(c)[1] for a determination that the debt owed by McKendry was nondischargeable under 11 U.S.C. Sec. 523(a)(2).[2] New American Federal was placed in receivership in February 1991 and the RTC was substituted as real party in interest.
 
 
 5
 During the hearings on the dischargeability issue, McKendry argued that the RTC's claim for nondischargeability was barred by the state statute of limitation. He contended that because the claim for nondischargeability was based on fraud, a state common law cause of action, the state statute of limitations was applicable, and the limitation period for fraud actions had expired long before the bankruptcy proceedings had begun. The RTC countered that the only applicable statute of limitations was that provided under Bankruptcy Rule 4007(c), which states that "[a] complaint to determine the dischargeability of any debt pursuant to Sec. 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to Sec. 341(a)." Fed.R.Bankr.P. 4007(c). There is no dispute that the RTC's claim for a determination of nondischargeability was filed within the period established in Rule 4007(c). The bankruptcy court held that the applicable statute of limitations was the Colorado provision limiting causes of action for fraud to claims brought within three years after accrual thereof. The bankruptcy court further held that Old American Federal, and therefore the RTC, should have been aware of the alleged fraud at one of the following times: when it purchased the loan in 1980; when it approved the sale of the two-thirds interest to Ms. Leigh in 1982 and 1983; when it reviewed the file in 1986 as a result of the delinquencies; in July 1987 when it sought relief from stay in Ms. Leigh's bankruptcy case; or in October 1987 when it signed a proposed stipulation releasing McKendry and Cunningham from any claim of delinquency on the loan, although that stipulation was never signed by McKendry or Cunningham or approved by the court. Accordingly, the bankruptcy court held that the RTC's complaint for a determination of nondischargeability pursuant to Sec. 523(c) was time-barred. The RTC appealed to the district court, which made oral findings of fact and conclusions of law and affirmed.
 
 
 6
 On appeal, the RTC asserts that the bankruptcy court erred in concluding that the state statute of limitations applied to bar its complaint for determination of nondischargeability because the only statute of limitations applicable in dischargeability proceedings is the sixty day provision in Federal Rule of Bankruptcy Procedure 4007(c). The RTC further argues that, assuming that the three year state statute of limitations for fraud is applicable to a determination of nondischargeability, the bankruptcy court erred in holding that Old American Federal should have known of the fraud prior to the expiration of the limitations period. Finally, the RTC argues that the bankruptcy court erred in its application of the doctrine of D'Oench, Duhme & Co. v. Federal Deposit Insurance Co., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its statutory counterpart, 12 U.S.C. Sec. 1823(e), and that under that doctrine the RTC cannot be charged with what Old American Federal "should" have known.
 
 
 7
 The question in this case is, where a debt has been reduced to judgment in state court, can the bankruptcy court be barred by a state statute of limitations from considering the underlying nature of the debt in determining whether that debt is dischargeable. In this case, the RTC has obtained a deficiency judgment against McKendry establishing both the existence and the amount of the debt; the only question before the bankruptcy court and the district court was whether the RTC may attempt to prove that that established debt is nondischargeable due to fraud. The conclusion of the bankruptcy court and the district court that the dischargeability action was barred by the state statute of limitations is a question of law that we review de novo. In re Wes Dor, Inc., 996 F.2d 237, 241 (10th Cir.1993).
 
 
 8
 In a case decided under the former Bankruptcy Act, this court held that principles of res judicata barred the bankruptcy court from considering a creditor's claim that the debt underlying a state court judgment had been incurred as the result of fraud and was therefore nondischargeable under section 17(c). In re Nicholas, 510 F.2d 160 (10th Cir.1975), cert. denied sub nom., 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975). However, the Supreme Court took a different view in Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In Brown, the Supreme Court held that res judicata did not apply to determinations of the dischargeability of a debt under section 17. Accordingly, the bankruptcy court could consider evidence extrinsic to the state court record to determine the true nature of the underlying debt.
 
 
 9
 We believe that the Supreme Court's analysis in Brown makes clear that the bankruptcy court in this case erred in holding the dischargeability question barred by the state statute of limitations. In Brown, the creditor brought a collection suit against the debtor in state court. That suit alleged that the debt was obtained by means of fraud. Ultimately, the parties settled the suit by a stipulation that did not indicate the basis for the suit. After judgment was entered on the stipulation, the debtor filed for bankruptcy and sought to have the debt discharged. The creditor sought to establish that the debt was nondischargeable because it was the product of the debtor's fraud. The bankruptcy court, considering itself bound by this court's holding in Nicholas, held that the prior state-court action was res judicata with respect to the issue of fraud and confined its consideration to the record of the state court proceeding. The bankruptcy court accordingly refused to consider other evidence extrinsic to the state court record, and held that because neither the state court judgment nor the record in that case revealed that the basis for the suit was fraud, the creditor had failed to prove that the debt was nondischargeable under Sec. 17(a)(2). Id. at 130, 99 S.Ct. at 2208-09. The district court affirmed as did this court, in an unpublished disposition.
 
 
 10
 The Supreme Court in Brown reasoned that applying res judicata to prior state court judgments when resolving questions of dischargeability under the bankruptcy laws would serve neither the interests underlying the doctrine of res judicata nor the policies underlying the bankruptcy laws. The Court recognized that the issues presented in a state court action on a debt are quite different from those presented in an action to prevent discharge. Id. at 134-35, 99 S.Ct. at 2211-12. Forcing a creditor to anticipate a hypothetical bankruptcy filing in his state court action on the debt and therefore to pursue all potential claims relevant to discharge in addition to those necessary to establish the debt would frequently entail needless additional litigation. Moreover, the Court reasoned, the 1970 amendments to the Bankruptcy Act removed certain dischargeability actions, including those for fraud under section 17(a)(2) of the Bankruptcy Act, from state courts that seldom dealt with such issues and placed them within the exclusive jurisdiction of the bankruptcy courts in order that they might develop expertise in the area. Id. at 135-36, 99 S.Ct. at 2211-12. The Court observed that it would "make[ ] little sense ... to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum." Id. at 137, 99 S.Ct. at 2212. The Court reasoned that it would be inconsistent with the philosophy underlying the amendments to the Bankruptcy Act to apply res judicata in such a way as to force dischargeability questions back on the state courts. Id. at 136, 99 S.Ct. at 2211-12. The Court concluded that refusing to apply res judicata to a prior state court judgment would allow the bankruptcy court to accurately determine whether the debt was in fact incurred as a result of fraud, a question squarely in issue for the first time before the bankruptcy court, a question that the debtor had placed in issue by filing for bankruptcy, and a question that Congress clearly intended to be heard and determined by the bankruptcy courts. Id. at 138, 99 S.Ct. at 2212-13.
 
 
 11
 As noted, the analysis in Brown was based on section 17 of the former Bankruptcy Act. In 1978 Congress repealed the Bankruptcy Act and replaced it with the current Bankruptcy Code. Bankruptcy Reform Act of 1978, Pub.L. 95-598 (codified as amended at 11 U.S.C. 101). Nevertheless, we believe that the same reasoning applies to the question of dischargeability under Sec. 523(a)(2) of the current Bankruptcy Code, which is substantially identical to former section 17(c). See Brown, 442 U.S. at 129 n. 1, 99 S.Ct. at 2208 n. 1; 3 Collier on Bankruptcy p 523.05 at 523-18 (1993 ed.).
 
 
 12
 In enacting the Bankruptcy Reform Act, Congress delegated to the bankruptcy courts jurisdiction to adjudicate "core proceedings," including determinations as to the dischargeability of particular debts. 28 U.S.C. Sec. 157(b)(1), (b)(2)(I). Among the dischargeability determinations delegated exclusively to the bankruptcy courts are those arising under Sec. 523(a)(2), the basis for nondischargeability alleged in this case, as well as those arising under Secs. 523(a)(4) and (6). 11 U.S.C. Sec. 523(c)(1); Advisory Committee Note (1983) to Fed.R.Bankr.P. 4007.[3] As the Court held in Brown with respect to res judicata, allowing state statutes of limitations to decide if a claim can be brought to determine that a debt is nondischargeable under Sec. 523(c) would allow the exclusive jurisdiction of the bankruptcy courts over core proceedings to be divested by operation of state law and would be inimical to the philosophy underlying the Bankruptcy Code.
 
 
 13
 This conclusion is supported by the language and structure of Bankruptcy Rule 4007. Rule 4007(b) provides that complaints for nondischargeability other than those filed under Sec. 523(c) may be filed at any time. Fed.R.Bankr.P. 4007(b). By contrast, subsection (c) imposes a sixty-day deadline for filing complaints to determine the dischargeability of debts under Sec. 523(c), i.e. complaints alleging nondischargeability under Sec. 523(a)(2), (4) and (6). Fed.R.Bankr.P. 4007(c). If claims of nondischargeability under Sec. 523(c) are not brought within the sixty-day period, the debts are discharged. 11 U.S.C. Sec. 523(c). The Advisory Committee Note to Rule 4007 explains the difference by noting that the bankruptcy courts have exclusive jurisdiction over the claims covered by Rule 4007(c), while the bankruptcy courts share jurisdiction over the claims covered under subsection (b) with any appropriate nonbankruptcy forum. Advisory Committee Note (1983) to Fed.R.Bankr.P. 4007. It would make little sense to impose a sixty-day filing period for claims of nondischargeability under Rule 4007(c) only to have the question of the timeliness of the claim determined by a state statute of limitations. We do not believe such was the intent of Congress.
 
 
 14
 We are aware that some bankruptcy courts have concluded that state statutes of limitations are applicable to questions of dischargeability arising under Sec. 523. For example, in In re Pascucci, 90 B.R. 438 (Bankr.C.D.Cal.1988), the creditor sought a determination of nondischargeability under Sec. 523(a)(2). The court concluded without any substantial analysis that "[w]here the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law." Id. at 442. Accordingly, the court applied the three year California statute of limitations for fraud actions but concluded that it had been tolled by the bankruptcy action.
 
 
 15
 Similarly, in In re Taylor, 137 B.R. 925 (Bankr.S.D.Ind.1991), the bankruptcy court held that the principles underlying the Supreme Court's decision in Brown were inapplicable where the state court action to establish the debt had been based on contract principles and at the time that action was brought, any fraud claims would have been barred by the state statute of limitations. Id. at 928. The Taylor court concluded that under these circumstances, the state statute of limitations was a bar to the determination of dischargeability under Sec. 523(a)(2).
 
 
 16
 We find the analyses in Pascucci and Taylor unpersuasive.[4] Rather, we agree with the analysis of In re Moran, 152 B.R. 493 (Bankr.S.D.Oh.1993). In that case, the creditor had brought suit in state court to establish a debt arising out of certain stock transactions. The complaint in the state court proceeding did not specifically plead the elements of fraud as required by Ohio law. The debtor argued that because the creditor had not pled fraud with specificity, the creditor had not brought the suit within the four year Ohio statute of limitations and the claim of nondischargeability was therefore barred. Id. at 494. In a comprehensive analysis, the bankruptcy court noted the distinction that we believe the Pascucci and Taylor courts overlooked. The Moran court observed that
 
 
 17
 [t]here is a fundamental flaw in the debtor's position in that it fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability issues under Sec. 523(a) of the Bankruptcy Code. In bankruptcy court there are two separate and distinct causes of action:
 
 
 18
 One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions. Brockenbrough v. Taylor (In re Taylor), 54 B.R. 515, 517-18 (Bankr.E.D.Va.1985) (quoting 3 Collier on Bankruptcy para. 523.11 at 523-75 n. 9 (15th ed. 1985)).
 
 
 19
 Until the debtor filed his petition for relief under the Bankruptcy Code, the plaintiffs obviously had no cause of action under Sec. 523(a)(4).... The only relevant question with respect to Ohio's statute of limitations is whether the plaintiffs sought to enforce their "debt" against the debtor within the period prescribed by the statute of limitations. The debtor does not dispute that the plaintiffs did so. In the instant adversary proceeding, the nature of the alleged debt, i.e., whether the debt is of a type determined by Congress to be nondischargeable, is to be decided by this court.
 
 
 20
 Moran, 152 B.R. at 495. Cf. In re Corwin, 76 B.R. 221, 223 (Bankr.S.D.Fla.1987) ("The applicability of 11 U.S.C. Sec. 523 is a federal question and, therefore, this court is not precluded from finding embezzlement was committed by the debtor even though the state court judgment included only breaches of contract and fiduciary duty.") We likewise find two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations--if suit is not brought within the time period allotted under state law, the debt cannot be established. However, the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law. In this case, the debt has already been established, so the state statute of limitations is immaterial. The only applicable limitations period is the sixty day period provided by Sec. 523(c). Because the RTC filed its complaint for a determination of dischargeability within the sixty day period provided in Sec. 523(c), the district court erred in holding that the RTC was barred by the state statute of limitations from proving the underlying nature of the debt.
 
 
 21
 Because we hold that the bankruptcy court erred in applying the state statute of limitations for fraud actions to bar the RTC's claim of nondischargeability, we need not reach the issue of that court's application of the doctrine of D'Oench, Duhme and Co. v. Federal Deposit Insurance Co., 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942).
 
 
 22
 Mr. McKendry argues that this matter need not be remanded because the bankruptcy court ruled on the merits that there had been no fraud. We do not read the bankruptcy court's decision as having reached the merits of the RTC's claim of nondischargeability. In its Order of June 8, 1992, the bankruptcy court specifically limited itself to determining the issues relating to the statute of limitations, (Appellant's App. Doc. 2 at 11), and explicitly stated that "[b]ecause this Court has determined that this action is barred by the statute of limitations, it is unnecessary to determine whether any fraud took place in 1979 or 1980 when the loan was made." Id. at 19. While the bankruptcy court did comment on what it perceived as the paucity of evidence establishing the fraud, it did not decide the issue. Accordingly, we must remand for a determination on the merits of the RTC's complaint for a determination of nondischargeability.
 
 
 23
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Stanley J. Roszkowski, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4) or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4) or (6), as the case may be, of subsection (a) of this section
 11 U.S.C. Sec. 523(c).
 
 
 [2]
 Section 523(a)(2) provides in pertinent part that a discharge does not apply to any debt
 for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
 (B) use of a statement in writing--
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonable relied; and
 (iv) that the debtor caused to be made or published with intent to deceive.
 11 U.S.C. Sec. 523(a)(2).
 
 
 [3]
 By contrast, claims that debts falling within Sec. 523(a)(1), (3), (5), (7), (8), and (9) are nondischargeable are not exclusively within the jurisdiction of the bankruptcy courts--rather, the bankruptcy court holds jurisdiction over these claims concurrently with any appropriate nonbankruptcy forum, including state courts. Advisory Committee Note (1983) to Fed.R.Bankr. 4007; 3 Collier on Bankruptcy p 523.06 at 523-40 (1993)
 
 
 [4]
 Mr. McKendry correctly notes that this court cited Pascucci in a per curiam decision in Paul v. Monts, 906 F.2d 1468, 1475 (10th Cir.1990). However, we did so only in our discussion of whether the remedies provided by the Bankruptcy Code for enforcing a Chapter 11 plan of reorganization are exclusive and preempt state law remedies. The discussion is therefore not pertinent to the issue before us today