HAGEN, District Judge:
I. Introduction
Thomas M. Banks (“Banks”) appeals from a judgment of the United States *865 Bankruptcy Court for the Central District of California which was affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit (“BAP”). Banks, a lawyer, asks us to reverse the decision of the BAP on the grounds that (1) all claims asserted against him by Gill Distribution Centers, Inc. (“Gill”), and Ronald Richardson (“Richardson”) are barred by the statute of limitations, and (2), even were those claims not time barred, they are dischargeable. We are asked to decide whether the. bankruptcy court erred in the following: (1) by concluding the statute of limitations had not expired as to Gill’s and Richardson’s claims; (2) by holding that Banks’s debt to Richardson was non-dischargeable under 11 U.S.C. § 523(a)(4); (3) by holding Banks’s debt to Gill was non-dischargeable under 11 U.S.C. § 523(a)(6); and (4) by awarding prejudgment interest at the California state rate of 10 percent instead of the lower federal rate of 5.413 percent.
II. Factual Background
This case stems from Banks’s misappropriation of the proceeds of litigation involving Gill, Pirelli Tire Corporation (“Pirelli”), Richardson, Port Warehouse Corporation (“Port”), Transworld Distribution Services, Inc., a.k.a. Richardson Warehouse Company (“Transworld”), and Banks.
In January, 1980, Transworld hired Banks, a lawyer, to prepare documents for Transworld’s sale to Gill of its warehousing business and Transworld’s sublease to Gill of a warehouse Transworld possessed on a sublease from a subsidiary of Pirelli. The transaction closed without permission of the owner of the warehouse, Boston Properties. In May, 1980, Boston Properties sued Transworld, Gill and Pirelli, its master lessee, for forfeiture of lease and unlawful detainer. As a result Gill was evicted.
In March, 1983, Transworld, with Banks as its counsel, sued Pirelli in Los Angeles County Superior Court for lost profits in the form of rent it would have received had Gill not been evicted, and for breach of the implied covenant. Before the suit was filed, Banks and Richardson entered into a retainer agreement by which Banks would represent Transworld, a corporation owned solely by Richardson. This was a contingent fee contract, setting Banks’s fee at 33 /& percent of all money received by compromise or settlement, or 40 percent of all money received by way of judgment or from settlement reached within 30 days prior to any settlement conference date.
On October 21, 1983, Gill sued various parties, including Richardson, Transworld, Banks, and Pirelli in the Los Angeles County Superior Court. This case was later consolidated with the action filed by Banks in March on behalf of Richardson and Transworld against Pirelli. Shortly before the consolidation of Gill’s and Richardson’s actions against Pirelli, Gill settled its case with, among others, Banks and Richardson. Banks signed the settlement agreement for himself and as the attorney for Transworld. Richardson signed the settlement agreement for himself and as the president of Transworld.
By the terms of the settlement agreement, dated February 20, 1988, Richardson assigned to Gill 40 percent of any recovery it might obtain from Pirelli up to, but not to exceed, $135,000. The settlement agreement also provided that should Richardson obtain a judgment against Pi-relli, Gill was entitled to receive any interest that had accrued on Gill’s portion of the judgment during an appeal.
Richardson won its case in state court against Pirelli and, on April 17, 1991, the judgment was affirmed on appeal. Pirelli paid $572,247.33 to the order of Banks, who deposited it in his trust account. That sum paid both the judgment ($522,-871.73) and the attorney’s fees on appeal *866 ($49,375.60). Under the settlement agreement, Gill was to receive $170,648.13 (the capped principal of $135,000 plus interest thereon through April 17, 1991), with the remaining $401,599.20 to be divided between Richardson and Banks pursuant to the contingent fee agreement. Banks, however, never paid Gill. Instead, Banks gave $261,435.86 to Richardson (which was $20,476.35 more than his entitlement) and kept the rest for himself.[2] This amounted to $310,811.47, or $150,171.78 more than his share.
The bankruptcy court found Banks intended either to negotiate with Gill to pay substantially less than its entitlement of $170,648.33, or to forestall payment long enough for the statute of limitations to run, leaving Gill with neither the money nor the legal recourse to obtain it.
On April 14, 1995, Gill sued Richardson, Transworld, Port, Banks and Pirelli in state court for breach of the settlement agreement. The suit was timely under California’s four year statute of limitations. Cal.Civ.Proc.Code § 337(1) (1998). A year later, while the case was still pending, Banks filed a petition under chapter 7 of the Bankruptcy Code. Gill and Richardson promptly filed nondischargeability actions in bankruptcy court against Banks alleging fraud, breach of fiduciary duty, and willful and malicious injury.[3] Gill had not included fraud as an allegation in its state court breach of contract complaint and Banks argued at the dischargeability trial that Gill was precluded from obtaining a fraud determination in the bankruptcy court because California’s statute of limitations for fraud actions (three years from discovery, Cal.Civ.Proc.Code § 338(d) (1998)) had expired pre-petition.
The bankruptcy court held: (1) there was no consensual agreement between Banks and Richardson to increase the debtor’s attorney fees from 40 to 50 percent of the recovery; (2) Banks’s attorney fees were to be calculated from Trans-world’s recovery after Gill’s share had been deducted per the settlement agreement; (3) Transworld’s acceptance of 50 percent of the recovery did not estop it from disputing the alleged fee increase initiated by the debtor; (4) the complaints to determine the dischargeability of debt filed by Gill and Richardson were timely filed under Rule 4007; (5) Gill need not have pled causes of action predicated on § 523(a) in state court in order to keep them alive in a bankruptcy proceeding; (6) Banks was liable to Gill for wilful and malicious injury, which liability is non-dis-chargeable pursuant to § 523(a)(6); (7) Banks was liable to Transworld and Richardson for breach of fiduciary duty, which liability is non-dischargeable pursuant to § 523(a)(4); and, (8) in the alternative, Banks was liable to Transworld and Richardson for indemnification in the amount either pays Gill in excess of $35,382.18.[4] See Gill Distribution Ctrs., Inc. v. Banks (In re Banks), 225 B.R. 738, 749 (Bankr. C.D.Cal.1998).
*867 Concerning the statute of limitations, the bankruptcy court held “that a debt upon which the state statute of limitations for fraud, breach of fiduciary duty, etc. has run prior to the filing of the bankruptcy case has been ‘established’ pre-petition if the creditor has taken a timely affirmative act which is necessary to the creditor’s ability to collect the debt in a manner provided for by law.” Id. at 745. The bankruptcy court stated further that “[t]o find otherwise, the court would risk holding the creditor hostage to the debtor’s choice of timing as to the filing of the bankruptcy petition.” Id. The bankruptcy court found that Bankruptcy Rule 4007 governed the timeliness of bankruptcy petitions. See id. at 746.
Finally, the bankruptcy court awarded prejudgment interest to Gill and Richardson at the California state interest rate of 10 percent, rather than the federal interest rate of 5.413 percent. See id. at 750. Relying on Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 714 (9th Cir.1992), the court held that Gill was entitled to California’s 10 percent prejudgment interest rate against Richardson on his breach of contract claim. To avoid inequities the bankruptcy court also applied the 10 percent interest rate in each of the other judgments. See id.
The BAP affirmed the bankruptcy court’s ruling, except to reverse in part Richardson’s judgment against Banks in order to provide a subrogation feature between Richardson and Gill.
III. Standard of Review
The decisions of the BAP are reviewed de novo. See DeMassa v. MacIntyre (In re MacIntyre), 74 F.3d 186, 187 (9th Cir.1996). In reviewing decisions of the bankruptcy court, legal conclusions are reviewed de novo, factual determinations are reviewed for clear error,’ and mixed questions of law and fact are reviewed de novo. See Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir.1997).
IV. Analysis
A. Statute of Limitations
Banks contends the' bankruptcy court erred in holding that Lee-Benner v. Gergely (In re Gergely), 110 F.3d 1448 (9th Cir.1997), and Resolution Trust Corp. v. McKendry (In re McKendry), 40 F.3d 331 (10th Cir.1994), compelled it to ignore state statutes of limitations entirely in determining the dischargeability of a debt. As mentioned, the bankruptcy court held a claim upon which the state statute of limitations had run pre-petition has been “established” pre-petition “if the creditor has taken a timely affirmative act which is necessary to the creditor’s ability to collect the debt in a manner provided for by law.” In re Banks, 225 B.R. at 745. The bankruptcy court said, “it would be arbitrary at best to hold that a debt can only be established if the plaintiff obtained a judgment from the state court prior to the filing of the bankruptcy case.” Id.
Banks disagrees, arguing that neither McKendry nor Gergely compels or supports the court’s opinion, and that we should follow the reasoning found in Mortgage Guaranty Insurance Corp. v. Pascucci (In re Pascucci), 90 B.R. 438 (Bankr. C.D.Cal.1988), when it held that:
[property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy.
Id. at 442 (citing Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136.(1979)).
In Gergely, the court concluded that “the expiration of a state statute of limita *868 tions does not affect an action for non-dischargeability if there is a valid judgment.” 110 F.3d at 1453. It reasoned that “[the creditor] is not seeking a new money judgment based on fraud; he is litigating the issue of dischargeability ... and the timeliness of the petition is governed by bankruptcy rules.” Id. The Tenth Circuit, has. held that “the question of the dischargeability of a debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law.” In re McKendry, 40 F.3d at 337.
We hold, as did McKendry, that there are two distinct issues to consider in the dischargeability analysis: first, the establishment of the debt itself, which is subject to the applicable state statute of limitations; and, 'second, a determination as to the nature of that debt, an issue within the exclusive jurisdiction of the bankruptcy court and thus governed by Bankruptcy Rule 4007. See' id. at 337.
The questions before us are whether the state court action was timely filed, and whether the filing of that action, without reducing it to judgment, was sufficient to establish a debt for purposes of the McKendry test. We hold that the state court action was timely filed and that it was sufficient to establish a debt for the purposes of the McKendry test. The Bankruptcy Code defines the term “debt” to mean “liability on a claim,” 11 U.S.C. § 101(12), and “claim” is defined as a “right to payment, whether or not such right is reduced to judgment....” 11 U.S.C. § 101(5). Nothing under the Bankruptcy Code requires a debt to have been reduced to a pre-petition state court judgment.
Banks also contends that creditors should not be allowed to assert claims in bankruptcy courts whose elements would be time-barred elsewhere. In Spinnenweber v. Moran, 152 B.R. 493 (Bankr. S.D.Ohio 1993), the bankruptcy court answered this contention:
[T]here is no requirement that the allegations of a complaint filed in state court prior to a debtor filing a petition in bankruptcy correspond to the elements of the grounds contained in § 523(a) of the Bankruptcy Code. Otherwise plaintiffs in state court would be required to anticipate the bankruptcy of every defendant and litigate every conceivable issue under § 523(a) in the event a defendant should subsequently file bankruptcy. Such needless litigation is not required by the Bankruptcy Code.
Id. at 496.
A similar policy sentiment can be found in the Supreme Court’s holding in Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), where the Court held that res judicata does not bar a creditor from offering evidence of a debtor’s fraudulent conduct in a dischargeability proceeding where the creditor had failed to plead fraud in the state court case. See id. at 135, 99 S.Ct. 2205. To hold-otherwise, the Court said, would inspire needless litigation by forcing “an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future.” Id. at 135, 99 S.Ct. 2205.[5] The Court observed that the creditor in Brown was not asserting a new ground for recovery. What the creditor was attempting to do was to meet “the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due to him.” Id. at 133, 99 S.Ct. 2205.
Here, Gill sued for breach of the settlement agreement, the instrument by which *869 the debt was created. Gill’s claims in bankruptcy court were for recovery on the same debt that was at issue in the .state court contract action. Although the state statute of limitation for fraud had run by the time Gill filed the timely state court contract action, Gill is not prevented from raising these issues in the dischargeability proceeding. Gill did not assert a fraud claim in state court, but certain non-fraud-based state claims may form the basis for a finding of nondischargeability under § 523(a)(2). This rule stems from the nature of the dischargeability determination. While an action may seem to be non-fraud-based for state purposes, this does not foreclose a later determination by the bankruptcy court that what occurred was fraudulent and therefore nondischargeable. See In re Gergely 110 F.3d at 1453-54; see also Brown, 442 U.S. at 137 n. 8, 99 S.Ct. 2205. Although in Gergely and McKendry the creditors had obtained their judgments before bankruptcy, the same rationale applies where, as here, the creditor brought suit on the debt in a timely fashion and was prevented from obtaining and enforcing judgment in that suit only by the debt- or’s bankruptcy.
B. Dischargeability of Banks’s Debt to Gill Under 11 U.S.C. § 523(a)(6)
Title 11 U.S.C. § 523(a)(6) prevents discharge from any debt “for willful and malicious injury by the debtor to another entity or the property of another entity.” The Supreme Court held this to require a “deliberate or intentional injury, not merely a deliberate or intentional act which causes injury.” Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Before Geiger, we did not require proof of intent to injure, but only that an intentional wrongful act necessarily produced harm, and was without just cause or excuse. See Impulsora Del Territorio Sur, S.A v. Cecchini (In re Cecchini), 780 F.2d 1440, 1443 (9th Cir.1986). Banks inaccurately argues that the bankruptcy court applied the old Cecchini standard instead of the rule in Geiger, and that this was error. The bankruptcy court, however, determined that Banks’s conduct with respect to Gill amounted to an intentional injury under the standard. enunciated in Geiger. The court found that:
Banks intended to injure Gill by forcing Gill to take substantially less than it was owed under the Settlement Agreement, or perhaps nothing at all. Further, the act was wrongful and Banks knew it was wrongful. Banks had no justification for withholding the money from Gill, nor for his attempts to delay Gill in its inquiry into what happened to the money.
In re Banks, 225 B.R. at 747.
“A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Whether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact. See Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir.1986); see also Dorr, Bentley & Pecha, CPA’s v. Pasek (In re Pasek), 983 F.2d 1524, 1528 (10th Cir. 1993). We recently held in Petralia v. Jercich (In re Jercich), 238 F.3d 1202 (9th Cir.2001), that “under Geiger, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct.” Id. at 1208.[6]
*870 The bankruptcy court understood very well the Supreme Court’s standard for nondischargeability in Geiger. It was not clearly erroneous for the court to find that Banks intentionally injured Gill. That finding is in line with this Circuit’s recent decision in In re Jercich, and is supported by sufficient evidence in the record.
C. Dischargeability of Banks’s Debt to Richardson under 11 U.S.C. § 523(a)(4) for Defalcation and Breach of Fiduciary Duty
The contingent fee agreement signed by Banks and Richardson, dated January 31, 1983, provides that Banks was to receive 40 percent of the recovery. Banks contends the agreement was orally modified to increase his fee from 40 to 50 percent of the total recovery, measured before Gill’s assigned share was deducted. Banks sent Richardson a proposed amendment to that effect on May 9, 1991. Richardson never signed the amendment. While Banks testified he had an oral agreement with Richardson before he sent the written amendment, Richardson denied having agreed to it. The bankruptcy court found Banks not to be a credible witness. It appears from the testimony that there was neither mutual assent to the change nor any new consideration.
Title 11 U.S.C. § 523(a)(4) provides that a debtor is not discharged from any debt for defalcation while acting in a fiduciary capacity. This court has defined defalcation as the “misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds. Under § 523(a)(4), defalcation includes the innocent default of a fiduciary who fails' to account fully for money received.” Lewis v. Scott (In re Scott), 97 F.3d 1182, 1186 (9th Cir.1996). Such a debt is nondischargeable under § 523(a)(4) only “where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created.” Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir.1997).
The bankruptcy court found Banks breached his fiduciary duty of loyalty to Richardson and awarded him damages in the amount of $150,171.18 as indemnity for any amount collected from Richardson by Gill in excess of the $20,476.45 for which Richardson was severally liable.[7]
Banks argues that the requirement of an express trust precludes the application of § 523(a)(4) to debts which arise in the context of a fiduciary relationship between attorney and client, unless an independent express trust exists. He relies on Braud v. Stokes (In re Stokes), 142 B.R. 908 (Bankr.N.D.Cal.1992), where a bankruptcy court found that despite the fact that the attorney owed a fiduciary obligation to his client, and caused the client financial injury through his negligence, the malpractice debt was dischargeable. See id. at 911. The court stated:
Since no California statute elevates the attorney-client relationship to one of trustee-beneficiary status, § 523(a)(4) *871 can come into play only if the defendants held the position of trustees of an express trust for the benefit of the plaintiff. The essential elements of an express trust are (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res.
Id. at 910.
Other circuit courts have held that the attorney-client relationship by itself does not establish a fiduciary relationship for the purposes of § 523(a)(4). See, e.g., Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir.1996). It is clear from the facts in this case, however, as the bankruptcy court correctly found, that Banks did in fact have a fiduciary relationship with his client, and breached his fiduciary duty to Richardson by not paying Gill its share of the settlement under their agreement. This circuit requires that for the purposes of § 523(a)(4) the debtor must have been a trustee in the strict or narrow sense through an expressed or technical trust. See In re Scott, 97 F.3d at 1182. While Banks argues that the requirement of an express trust precludes the application of § 523(a)(4) in this case because no express trust existed, his argument is contradicted by his admission in his appellate brief that he deposited and withdrew the funds in question to and from his client trust account.[8] When he placed his client’s funds into his trust account, he became his client’s fiduciary.
Banks also contends that his alternative liability to Richardson is on an indemnity theory, which he argues is dis-chargeable under § 523(a). Banks is correct in stating that § 523(a) does not make a claim for indemnity non-dischargeable. Nevertheless, Richardson is not seeking indemnification from Banks; Richardson is seeking damages for Banks’s breach of fiduciary duty. Banks owed a duty in his capacity and function as Richardson’s fiduciary to pay Gill. If Richardson is required to make that payment to pay Gill, then Richardson must be subrogated to Gill’s position vis-a-vis Banks. Banks’s liability to Richardson is based on § 523(a)(6), by which it is non-dischargeable to the extent Richardson pays Gill more than $20,476.45 (plus accrued interest).[9]
D. Interest Rate
The federal prejudgment interest rate applies to actions brought under federal statute, such as bankruptcy proceedings, unless the equities of the case require a different rate. Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384, 1392 (9th Cir.1994); see also Sunclipse Inc. v. Butcher (In re Butcher), 200 B.R. 675, 681 (Bankr.C.D.Cal.1996), where the court found the federal interest rate “is appropriate unless a departure is accompanied by a reasoned justification.” (quoting Blanton v. Anzalone, 813 F.2d 1574, 1576 (9th Cir.1987)). The bankruptcy court gave that reasoned justification when it stated:
[t]o apply the federal rate to the judgments against Banks, but the state rate to the judgment against Richardson would lead to incompatible and unfair amounts of recovery in this case. It is necessary to have the same post-judgment interest rate used in each of the three judgments or Gill would be enti- *872 tied to recover more from Richardson than it could recover directly from Banks and Richardson would not be able to seek full indemnification from Banks for the amount that he pays Gill.
In re Banks, 225 B.R. at 750.
AFFIRMED

. This figure represents 50 percent of the sum Pirelli paid on the judgment and does not include the amount Pirelli paid for attorney’s fees.

. Gill and Richardson each pleaded nondis-chargeability pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). Gill v. Banks is Adv. No. 96-01416-GM; Richardson/Trans-world v. Banks is Adv. No. 96-01334-GM. On August 13, 1996, Gill removed the state-court lawsuit to this court as Adv. No. 96-01515-GM. Because Adv. No. 96-01515-GM and Adv. No. 96-01416-GM contained substantially the same issues of law and fact, the bankruptcy court entered an order consolidating these two adversary proceedings on December 20, 1996.

.The bankruptcy court also determined that Richardson and Transworld were liable to Gill, a matter dealt with in a separate appeal. See In re Banks, 225 B.R. at 748.

. Section 17 of the Bankruptcy Act of 1938 is the predecessor to § 523.

. In In re Jercich, we held that a debtor-employer's deliberate breach of contract, in electing not to pay wages owed to his employee even though he had funds to do so, violated *870 a fundamental policy of California law and rose to the level of tort. Id. at 1204. We further held that though intentional breach of contract generally will not trigger the "willful and malicious injury” dischargeability exception, if the debtor's breach of contract is accompanied by tortious conduct that results in willful and malicious injury, then the resulting debt would be excepted from discharge. Id. at 1208.

. The BAP reversed this in part when it found that to the extent that Richardson is required to pay Gill in excess of $20,476.45 (plus accrued interest), Richardson is subrogated to Gill’s portion vis-a-vis the debtor, and that any judgment in favor of Richardson in excess of the indemnification/subrogation amount is dischargeable.

. "On April 17, 1991, Pirelli’s lawyer paid Transworld, by check issued to Bank's client trust account, the sum of $523,274.33, representing all principal, attorney’s fees, costs and interest accrued to date.” Appellant's Brief pp. 12-13.

. This represents the amount Richardson received in excess of his entitlement under the settlement agreement with Gill.