IN RE LAWRENCE RICK SCHAFER, Chapter 7, Debtor.
KEVIN FRAZIER, Plaintiff-Appellee,
v.
LAWRENCE RICK SCHAFER, Defendant-Appellant.
BAP No. UT-07-114, Bankr. No. 06-23099, Adv. No. 06-02521
United States Bankruptcy Court, Appellate Panel, Tenth Circuit.
March 2, 2009.
Before CORNISH, Chief Judge, McFEELEY, and MICHAEL, Bankruptcy Judges.
OPINION[*]
MICHAEL, Bankruptcy Judge
Debtor appeals an order of the United States Bankruptcy Court for the District of Utah determining that a state court default judgment against him for money loaned is non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A). Having reviewed the record and applicable law, we affirm.

I. BACKGROUND FACTS[1]
In 1998 and 1999, Lawrence Rick Schafer ("Schafer") and Kevin Frazier ("Frazier") worked in the Delta Airlines "airport group" in the same office in Salt Lake City. In addition to being employed by Delta, Schafer was a penny stock day trader on the side. Due to the openness of the office's work space, Frazier and his co-workers observed Schafer actively trading penny stocks on the internet while at work, and overheard him talk of money he made from his trades.
At some time prior to April 1999, Schafer's girlfriend informed him about new investment opportunities with Worldwide Internet Partners Funding Group ("Worldwide"), a California venture capital group providing start-up capital for internet businesses. After returning from his trip to San Francisco to investigate Worldwide, Schafer approached several co-workers about investing in Worldwide. Having recently received proceeds from the sale of his home in Atlanta, Frazier asked Schafer about the investment opportunity. After a series of conversations, Frazier, who had no prior venture capital experience, decided to invest $20,000 in Worldwide through Schafer.
On the morning of Friday, May 7, 1999, Frazier presented Schafer with a cashier's check in the amount of $20,000. A couple of hours later, Schafer told Frazier he needed to urgently wire a total of $100,000 to Worldwide to protect their position with Worldwide, and avoid either a loss of their investments, or a significantly diminished profit. Schafer informed Frazier he was $52,000 short of the required amount, and asked him to increase the amount of his investment. Frazier declined, as he was uncomfortable risking more than $20,000 in this kind of investment. Schafer then asked Frazier to borrow the $52,000 instead. Schafer promised to repay Frazier $60,000 within two weeks. Frazier agreed to loan the money, if Schafer would sign a promissory note.
Later that afternoon, money was wired from Frazier's credit union account to complete the investment transaction with Worldwide. Over the weekend, Frazier drafted a promissory note in the amount of $60,000, which Schafer executed on Monday. The note specified payment was to be made on or before May 28, 1999, which was three weeks from the date the money was loaned.[2] The date for repayment passed. Frazier began asking about repayment very shortly thereafter, but was told by Schafer that he did not have the money. Delta then transferred Frazier to work in Europe, and within a few months, Schafer was no longer employed by Delta. The loan was never repaid. In June 2003, Frazier obtained a default judgment against Schafer in state court in the amount of $72,000 (the $60,000 due under the promissory note plus accrued interest), together with statutory interest at 10 per cent per annum. In that state court action, Frazier made no allegations concerning fraud, and the default judgment was based solely on breach of contract. It is undisputed that the state statute of limitations period for fraud has expired.

II. BANKRUPTCY COURT PROCEEDINGS
In August 2006, Schafer filed for Chapter 7 bankruptcy. Frazier timely filed this adversary proceeding objecting to dischargeability of the judgment debt under 11 U.S.C. § 523(a)(2)(A).[3] In his complaint, Frazier asserted that Schafer intentionally misrepresented that he would repay the loan within two weeks from funds currently in his brokerage account.[4] In the alternative, Frazier argued that Schafer made the statement to him in reckless disregard of the truth.
At trial, Schafer made several arguments in response to Frazier's § 523(a)(2)(A) claim, only two of which are before us on appeal. First, Schafer made an oral motion to dismiss, contending that the state statute of limitations for fraud precluded Frazier's claim. Second, Schafer claimed he lacked the requisite intent to deceive in borrowing the funds from Frazier, and put on evidence he believed proved that fact. After taking the matter under advisement, the bankruptcy court ruled that, based on the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") decision In re McKendry,[5] the only relevant statute of limitations is the 60 days period found in Federal Rule of Bankruptcy Procedure 4007(c) for filing nondischargeability claims.[6] The bankruptcy court also rejected Schafer's factual argument regarding intent to deceive. Finding that Frazier had met his burden under §532(a)(2)(A) by a preponderance of the evidence, the bankruptcy court ruled that the default judgment debt was nondischargeable. Schafer now timely appeals the bankruptcy court's decision.

III. JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[7] Neither party elected to have this appeal heard by the United States District Court for the District of Utah. The parties have thus consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[8] In this case, the order and judgment of the bankruptcy court terminated the adversary proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

IV. STANDARD OF REVIEW
We review the bankruptcy court's legal conclusions de novo. De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[9] We review the bankruptcy court's factual findings under the clearly erroneous standard. A factual finding is "clearly erroneous" when "`it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[10] Additionally, in reviewing findings of fact, we are compelled to give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[11]

V. ANALYSIS
On appeal, Schafer contends the bankruptcy court erred in determining the state court money judgment to be nondischargeable because the McKendry decision should not "allow unfettered inquiry into an underlying nature of a debt even when its inquiry may be incomplete due to unavailable or stale evidence[.]"[12] Further, Schafer argues the "bankruptcy court judge erroneously concluded that the debtor had acted with fraudulent intent[.]"[13] We reject both arguments.

A. McKendry

According to Schafer, "McKendry allows creditors to bring an adversary complaint alleging fraud as a basis for [non-dischargeability] of a claim even after evidence becomes unavailable or has become stale."[14] Therefore, he complains that the McKendry ruling is unfair.[15] Schafer fails to comprehend, however, that we are bound by the Tenth Circuit's ruling in McKendry. When directly questioned about the binding nature of McKendry at oral argument, Schafer's counsel responded that they were not asking this Court to overrule McKendry, but instead to "provide guidance" on how to apply McKendry in the default judgment context. Such distinction is irrelevant.
The bankruptcy court correctly pointed out that the Tenth Circuit addressed the precise issue on appeal before us in McKendry.[16] As framed by the Tenth Circuit, "[t]he question in this case is, where a debt has been reduced to judgment in state court, can the bankruptcy court be barred by a state statute of limitations from considering the underlying nature of the debt in determining whether that debt is dischargeable."[17]
In McKendry, the Tenth Circuit stated:
We likewise find two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations-if suit is not brought within the time period allotted under state law, the debt cannot be established. However, the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations period established by bankruptcy law. In this case, the debt has already been established, so the state statute of limitations is immaterial. The only applicable limitations period is the sixty day period provided by § 523(c). Because the [creditor] filed its complaint for a determination of dischargeability within the sixty day period provided in § 523(c), the district court erred in holding that the [creditor] was barred by the state statute of limitations from proving the underlying nature of the debt.[18]
The Tenth Circuit's reasoning in McKendry is equally applicable in this case. The fact that Frazier obtained a default judgment against Schafer does nothing to alter the analysis. We reject Schafer's argument that the state statute of limitations bars Frazier's claim.
The McKendry rule sounds in practicality. The shortest distance between two points is a straight line. If a state court can determine liability on some basis other than fraud, such as failure to make payments on a promissory note, then there is rarely, if ever, a reason for the state court to delve into issues of fraud. Several courts have held that a party is not required to plead and prove fraud in a state law action in order to contest the dischargeability of a particular debt under § 523.[19] The fact that Frazier may recover from Schafer in state court on the basis of the promissory note does not preclude Frazier from utilizing § 523(a)(2)(A) to prevent discharge of that debt in bankruptcy court. Until Schafer sought the protection of the bankruptcy court, Frazier had no need to institute proceedings relating to the dischargeability of the debt owed to him. Now having sought the benefits of a discharge in bankruptcy, Schafer cannot prevent Frazier from seeking a ruling that his debt should survive the bankruptcy case.

B. Intent to deceive
On appeal, Schafer also argues that Frazier did not prove all of the elements of his §523(a)(2)(A) claim. Section 523(a)(2)(A) provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][20]
At trial, Frazier had the burden of proving each element of his § 523(a)(2)(A) claim by a preponderance of the evidence.[21] The elements of a § 523(a)(2)(A) claim are: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the debtor's representation; 4) the creditor's reliance was justifiable; and 5) the creditor was damaged as a proximate result.[22] Schafer contends Frazier failed to establish his intent to deceive by a preponderance of the evidence.
According to the bankruptcy court:
Though the evidence is contradictory, Schafer either stated that he had $60,000 in his brokerage account but needed a short period of time simply to complete the transactions to liquidate the funds (Frazier's version), or Schafer stated that he would liquidate funds from his brokerage account if Frazier made the loan, implying that he needed time for the account to increase in value (Schafer's version). Under either version, Schafer promised to repay Frazier $60,000 within two weeks using funds from his brokerage account, and Schafer intended that Frazier rely upon his representations regarding his ability to do so.[23]
Based on this evidence, the bankruptcy court made these alternative findings of fact:
The Court finds that if Schafer represented to Frazier that his brokerage account balance was $60,000 at the time of the loan, that statement was false. If Schafer did not actually make a false statement regarding the current balance in the account, the Court finds that it was unrealistic and reckless for Schafer to expect his brokerage account, which consisted entirely of penny stocks, to increase in value from $10,000 to $60,000 by May 28, 1999, just three weeks later.[24]
The bankruptcy court then concluded that "Schaefer obtained money by false pretenses, a false representation, or actual fraud within the meaning of §523(a)(2)(A)."[25]
The existence of intent to deceive is a question of fact, reviewed for clear error.[26] Because a debtor rarely admits a lack of intention to repay a debt, "such intent must be inferred by the totality of the circumstances of the case at hand."[27] This includes a debtor's reckless disregard for the truth.[28] The bankruptcy court may consider not only a debtor's conduct at the time of the false representations, but may consider subsequent conduct, to the extent it provides an indication of the debtor's state of mind at the time of those representations.[29] Additionally, in making a finding of intent, the demeanor and credibility of the witness plays a very large role.[30]
On appeal, Schafer contends that "[t]he bankruptcy court's finding that the debtor acted unrealistic and with reckless disregard for the truth of his ability to repay the loan in three weeks time is in error."[31] According to Schafer, "[a]n honest belief, however unreasonable, that the representation is true and the speaker has information to justify it has been held . . . to be no sufficient basis for deceit."[32] Therefore, Schafer argues that his unreasonably optimistic view that he could repay the debt does not constitute fraud if he intended to repay the debt when it was incurred. Schafer claims the promissory note is evidence of his intent to repay the loan, and that Frazier failed to show that Schafer did not honestly believe his stock portfolio would appreciate as expected.
Schafer, however, overlooks his responsibility to bring forth information that would justify his unreasonable but honest belief that the representation was true. He also misapprehends the function of an appellate court. As explained by the Tenth Circuit, we are to defer to the trial court's assessment of the credibility of witnesses and its factual findings.
"It is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." Gillman v. Scientific Research Prods. (In re Mama D'Angelo), 55 F.3d 552, 555 (10th Cir. 1995) (internal citation omitted). In addition, we are required to "view the evidence in the light most favorable to the [ ] court's ruling . . . and must uphold any [ ] court finding that is permissible in light of the evidence." Exxon Corp. v. Gann, 21 F.3d 1002, 1005 (10th Cir. 1994) (internal citation omitted).[33]
In this case, the bankruptcy court specifically stated that it took into consideration "the credibility of the witnesses [and] the exhibits received[.]"[34] The bankruptcy court had the opportunity to evaluate Schafer's demeanor and testimony, and found him not credible. For example, Schafer gave conflicting testimony regarding the value of his brokerage account. The bankruptcy court chose to believe Schafer's deposition testimony which indicated his portfolio was worth less than $10,0000 on May 7, 1999, rather than his trial testimony that his account reached $80,000 in value. Likewise, executing a promissory note can be viewed as part of the misrepresentation meant to induce Frazier to make the loan. The timing of the loan also supports finding intent to deceive. Schafer's request to borrow money came almost immediately after Frazier made a $20,000 investment in Worldwide, and had the purported purpose of protecting that investment. Under the circumstances, we cannot say the bankruptcy court's findings were clearly erroneous, and therefore, reject Schafer's argument.

VI. CONCLUSION
The bankruptcy court's order determining that Schafer's debt to Frazier is nondischargeable under § 523(a)(2)(A) is affirmed.
NOTES
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[1] The following is a summary of undisputed facts taken from the bankruptcy court's Memorandum Opinion, in Appellant's App. at 140.
[2] Frazier voluntarily extended the due date from two weeks to three weeks.
[3] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.
[4] Complaint at 4, ¶ 18, in Appellant's App. at 12. Frazier believed the two week loan was necessary because Schafer could not timely liquidate the funds in his brokerage account.
[5] 40 F.3d 331 (10th Cir. 1994).
[6] Federal Rule of Bankruptcy Procedures 4007(c) states:

A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.
Fed. R. Bankr. P. 4007(c).
[7] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[8] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[9] Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).
[10] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting LeMaire ex rel. Le Maire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[11] Fed. R. Bankr. P. 8013.
[12] Appellant's Br. at 4.
[13] Id.
[14] Id. at 20.
[15] Id. at 24.
[16] Memorandum Decision at 8, in Appellant's App. at 147.
[17] In re McKendry, 40 F.3d 331, 334 (10th Cir. 1994).
[18] Id. at 337 (citing In re Moran, 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993)).
[19] Mills v. Gergely (In re Gergely), 110 F.3d 1448, 1453-54 (9th Cir. 1997); Winn v. Holdaway (In re Holdaway), 388 B.R. 767, 783 (Bankr. S.D. Tex. 2008); In re Moran, 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993), cited with approval in McKendry, 40 F.3d at 336-37; Damian Mfg. Co. v. Corwin (In re Corwin), 76 B.R. 221, 223 (Bankr. S.D. Fla. 1987) ("The applicability of 11 U.S.C. § 523 is a federal question and, therefore, this Court is not precluded from finding embezzlement was committed by the debtor even though the state court judgment included only breaches of contract and fiduciary duty.").
[20] § 523(a)(2)(A).
[21] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).
[22] Id. (citing Grogan v. Garner, 498 U.S. 279, 287 (1991), as modified by Field v. Mans, 516 U.S. 59, 70 (1995)). In Mans, the United States Supreme Court adopted the same test, except that the reliance standard to be used is the less stringent subjective standard of "justifiable" reliance, rather than the objective standard of "reasonable" reliance. Notwithstanding the decision of the Tenth Circuit in Young, this Court will use the justifiable reliance standard adopted by the United States Supreme Court.
[23] Memorandum Decision at 4, in Appellant's App. at 143.
[24] Id. at 7, in Appellant's App. at 146.
[25] Id. at 11, in Appellant's App. at 150.
[26] Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015, 1018 (9th Cir. 1997).
[27] Chevy Chase Bank FSB v. Kukuk (In re Kukuk), 225 B.R. 778, 786 (10th Cir. BAP 1998).
[28] Blue Ridge Bank and Trust v. Cascio (In re Cascio), 318 B.R. 567, 575 (Bankr. D. Kan. 2004), aff'd, 324 B.R. 384 (10th Cir. BAP 2005) (citing Driggs v. Black (In re Black), 787 F.2d 503, 506 (10th Cir.1986), abrogated in part on other grounds by Grogan v. Garner, 498 U.S. 279 (1991), and collecting cases).
[29] Groetken v. Davis (In re Davis), 246 B.R. 646, 652 (10th Cir. BAP 2000), vacated in part on other grounds, In re Davis, 35 F. App'x 826 (10th Cir. 2002).
[30] Chevy Chase Bank FSB v. Kukuk (In re Kukuk), 225 B.R. 778, 786 (10th Cir. BAP 1998).
[31] Appellant's Br. at 16.
[32] Id. at 16 (citing In re Kukuk, 225 B.R. at 788 (quoting Prosser and Keeton on Torts, at 742 (5th ed. 1984)).
[33] In re Ford, 492 F.3d 1148, 1154 (10th Cir. 2007). See also Fed. R. Bankr. P. 8013.
[34] Memorandum Decision at 2, in Appellant's App. at 141.